# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cramirez at 3:37 pm, Jan 20, 2011

| | |
|---|---|
| In the matter of: ) | |
| ) | Adversary Proceeding |
| NATALIE GORDON ) | |
| (Chapter 7 Case Number <u>09-42738</u>) ) | Number <u>10-4019</u> |
| ) | |
| *Debtor* ) | |
| ) | |
| BILL ATKINSON ) | |
| *Plaintiff* ) | |
| ) | |
| NATALIE GORDON ) | |
| *Defendant* ) | |

## MEMORANDUM AND ORDER

Debtor's case was filed on December 1, 2009. Prior to the filing of her case she had a business relationship with plaintiff Bill Atkinson, a business consultant. The disintegration of that relationship led to a lawsuit filed by Atkinson, which was pending at the time the underlying bankruptcy case was commenced. When Debtor's Chapter 7 case was filed she did not schedule Atkinson as a creditor or the Atkinson lawsuit as a claim on her schedules. As a result, Atkinson received neither notice of the filing of her bankruptcy nor official notice of the deadline for filing adversary proceedings to challenge dischargeability. However, his counsel, in a random coincidence, discovered the pendency

AO 72A
(Rev. 8/82)

of her case on the same day as the deadline for filing such complaints and immediately filed this action under §§ 523 and 727 of the Bankruptcy Code. In summary, the complaint alleges that Debtor committed actual fraud under § 523 by closing a loan transaction without revealing that Atkinson had a vested interest in being paid an agreed-upon commission upon a lender's commitment to make such a loan to her. The complaint seeks a determination that the debt of $37,120.00 owed to Atkinson be excepted from her discharge. Atkinson also contends that Debtor's schedules and statement of financial affairs are false and misleading and that Debtor should be denied a Chapter 7 discharge under § 727(a)(4).

## FINDINGS OF FACT

In 2005 Debtor and her husband became interested in purchasing a small hotel on Tybee Island, Georgia, consisting of thirteen rooms, a lobby, and some retail space. Debtor entered into a compensation agreement on November 11, 2005, with Atkinson, which provided in relevant part that he would be paid $2,000.00 and in return would prepare a business plan, cash flow analysis, and various projections. Compensation Agreement, Exh. P-1. Debtor planned to use these projections in applying for a business loan for the acquisition of that hotel. The contract further provided that "[w]hen *a lender* approves the requested loan and issues a written commitment," Debtor would pay "an additional fee equal to 2.0% of the committed loan amount, less the amount previously paid." Id. (emphasis added). The contract also provided that Debtor understood that fee was "fully earned and is due and payable upon issuance of the commitment by a Lender and [Debtor] agree[d] to make this payment upon receipt of said commitment." Id.

Debtor paid the $2,000.00 deposit and Atkinson prepared a loan package for her. Invoice, Exh. P-2. That loan package was submitted for approval to the Temecula Valley Bank ("TVB"), but that bank declined to make the loan. However, Dana Campbell, business development officer for TVB, forwarded the loan package she had worked up—which may or may not have incorporated Atkinson's work product—to an entity known as Business Loan Express ("BLX") in care of Rebecca Grant. Ultimately, BLX placed the loan with Business Loan Center, LLC, and a closing was conducted on July 11, 2006. Settlement Statement, Exh. P-4. The Settlement Statement reveals that the gross loan amount was $2 million, but no sums were shown on the Settlement Statement as being paid to Atkinson. Id. When Atkinson learned that the closing had taken place, he billed Debtor for the sum due per the contract. Letter, Exh. P-5. Debtor replied, indicating she believed his services had been terminated. Letter, Exh. P-6. On September 13, 2007, Atkinson filed suit in the State Court of Chatham County, Georgia. Complaint, Exh. P-9. The case proceeded to mediation (Mediation Notice, Exh. P-14) in March of 2008 and continued—after unsuccessful mediation—in discovery as late as June of 2008. Answers, Exh. P-9.

When Debtor filed her bankruptcy petition on December 1, 2009, she did not reveal the Atkinson claim, even as a "disputed" claim, nor did she schedule the pendency of the lawsuit in her statement of financial affairs.[1] She also did not schedule the pendency of two sexual harassment lawsuits against her husband, in which she was named a co-

---

[1] Debtor did ultimately file Amended Schedules B and F, and an Amended Statement of Financial Affairs on April 29, 2010 (Dckt. Nos. 33, 34), more than a month after the commencement of this adversary proceeding. Complaint, Dckt. No. 1, (March 8, 2010).

defendant. She did not list on her Schedule B (Personal Property) any ownership in any incorporated or unincorporated businesses. Schedule B, Case No. 09-42738, Dckt. No. 1, line 13. Debtor did show herself as the owner of Atlantis Inn, LLC in her Statement of Financial Affairs and her Schedule I (Current Income). Schedule I, Case No. 09-42738, Dckt. No. 1; Statement of Financial Affairs, Case No. 09-42738, Dckt. No. 1, line 18a. Because her schedules, when taken as a whole, disclosed this ownership, I do not find that her schedules were fraudulent as they pertain to her ownership of Atlantis Inn, LLC.

However, she owned and operated Sea Strands LLC d/b/a Sea Strands Hair Salon, which went fully undisclosed. *See* BDO Summary Report, Exh. P-3, page 4; Schedule B, Case No. 09-42738, Dckt. No. 1, line 13; Statement of Financial Affairs, Case No. 09-42738, Dckt. No. 1, line 18a. She also listed no furnishings for the hotel property despite the fact that the hotel was fully furnished.

BLX ultimately paid Atkinson a referral fee out of the closing, in the amount of $6,000.00 in June 2007 (Check, Exh. D-1), but Debtor rebuffed Atkinson's efforts to be paid the balance of his commission. *See* Letter, Exh. P-6.

## CONCLUSIONS OF LAW

Fraud Exception to Discharge Pursuant to § 523(a)(2)

The allegation of actual fraud centers on the contention that Debtor concealed the fact that Atkinson had (or might have) some monetary interest in a commission

arising out of the closing of the loan with BLX. The record is murky on this point. Exhibit P-3 reveals that Atkinson's work product was a part of the BDO Summary Report, the loan application package presented to TVB. However, when that loan was declined and Dana Campbell at TVB passed the information forward to BLX, it is unclear whether Atkinson's work product was included in the package. Nevertheless, later email communication from Campbell at TVB to Rebecca Grant at BLX stated that when TVB referred the file to BLX, Atkinson's entitlement to a fee was revealed. Email, Exh. P-7. Shortly after that, Atkinson inquired directly of BLX concerning his fee and was informed on September 26, 2006, that no draws had been authorized. Email, Exh. P-8. I conclude that the parties knew or should have known that Atkinson had a claim to his commission under the contract, regardless of whether that claim was disputed. However, there is insufficient evidence to find that Debtor fraudulently concealed that information from BLX so as to deprive Atkinson of the commission. Atkinson will not prevail on the § 523 fraud theory.

Denial of Discharge Pursuant to § 727(a)(4) False Oath or Account

With respect to § 727, the record is clear that Debtor omitted not only the pending Atkinson lawsuit, but also two other lawsuits, and Debtor's ownership of at least one LLC. Debtor also failed to schedule Atkinson as the holder of a claim. Most of these deficiencies were cured by amendments to the schedules. *See* Case No. 09-42738, Dckt. Nos. 33, 34. However, these amendments were filed after the March 8, 2010, deadline to file a complaint objecting to discharge of Debtor or to determine dischargeability of certain debts. Notice of § 341 Meeting, Dckt. No. 6 (December 3, 2009). Debtor testified that she

had forgotten about all three lawsuits since there had been no activity on the litigation for over a year at the time she filed her case. I find that explanation to be unpersuasive.

On October 19, 2006, Debtor responded to Atkinson's invoice for services rendered, disputing his entitlement to any commission and asserting that on April 18, 2006, her husband terminated Debtor's relationship with Parkway Financial. She asserted that because Parkway Financial had referred her to Atkinson, the termination of her relationship with Parkway Financial was sufficient to have terminated Atkinson. Letter, Exh. P-6.

I find no legal basis for affirming that conclusion, and it is clear that there was subsequent communication between Atkinson and Debtor, which eviscerates any contention that their relationship had ended by April 18, 2006. Faxes, Exh. P-15, P-16 (dated June 5, 2006 and May 17, 2006 respectively). Because of their strained relationship, the subsequent filing of the litigation, and the degree of activity the litigation entailed well into 2008, it is simply inconceivable that Debtor could have "forgotten" the existence of the case or the fact that Atkinson held a claim. Answers, Exh. P-9. Her similar explanation concerning two sexual harassment law suits filed against her as a co-defendant, along with her husband who was apparently the primary defendant, also strains credulity.

I conclude that even if Debtor had a bona fide belief that she had no liability on any of the three claims—particularly that of Atkinson—for the reasons that she has articulated, it is not within the province of a debtor to decide what creditors to list and which

ones to omit. In re Chalik, 748 F.2d 616 (11th Cir. 1984) (holding that a debtor's failure to list even valueless securities constituted a false oath because "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them."). As I held in In re Graham, "[a]ccurate disclosure is the *sine qua non* of a Debtor's duties and of a bankruptcy case itself." Case No. 07-40427 (Bankr. S.D. Ga. December 9, 2010) (Davis, J.). The Bankruptcy Code clearly requires that all creditors, all claims, and all litigation be revealed, regardless of the merits. Debtors are fully empowered to list these as disputed. There is no benign explanation for the omission of the Atkinson claim. While it might be possible to overlook a single omission from her schedules, the pattern of conduct in making multiple omissions negates any inference that this was mere oversight.

ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that Plaintiff's Objection to Discharge is GRANTED. Debtor's discharge is DENIED, and creditors are free to pursue their state law remedies upon closing of the case.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 19th day of January, 2011.